[Cite as *State v. Lomack*, 2013-Ohio-5.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-32 |
| SAMUEL LOMACK, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
Court of Common Pleas, Case No.
2011CR203

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     January 2, 2013

APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

BRIAN WALTZ                    ASHLEY RUTHERFORD
Assistant Prosecuting Attorney       Willis & Willis L.P.A.
Licking County Prosecutor's Office     4653 Trueman Blvd., Ste. 100
Newark, OH 43055                Hilliard, OH 43026

*Gwin, J.,*

**{¶1}** Defendant-appellant Samuel Lomack ["Lomack"] appeals his conviction in the Licking County Court of Common Pleas for one count of trafficking in hydrocodone in excess of the bulk amount and within the vicinity of a juvenile.

*Facts and Procedural History*

**{¶2}** On April 21, 2011, Jeremy Fister contacted Lomack. Fister was a confidential informant working under the direction of the Central Ohio Drug Enforcement Task Force. During that conversation, Lomack offered to sell 100 Vicodin pills to Fister for $400. The pair later arranged to meet at the Flying J gas station in Kirkersville, Licking County, Ohio. Prior to the meeting, both Fister and his vehicle were searched. Fister was then given buy money and wired with an audio recorder.

**{¶3}** Lomack arrived at the Flying J with his wife and children. Fister approached Lomack's van on the driver's side. Upon approaching, Fister testified that Lomack gave him 100 pills in exchange for $400.00. The undercover officers watching this transaction were able to tell that something was going back and forth, but could not specifically see the pills or the money.

**{¶4}** Shortly after the alleged transaction, Lomack exited his vehicle and entered the gas station. Lieutenant Paul Cortright approached Lomack and asked him to step outside where they could talk. Lieutenant Cortright testified that he advised Lomack of his *Miranda* rights and Lomack waived those rights. During the ensuing interview, Lomack admitted to selling the pills to Fister. Lomack later gave a written statement admitting to trafficking in drugs. The pills were recovered and submitted for testing, which indicated that they were the Schedule III version of Hydrocodone.

**{¶5}** Lomack was indicted April 29, 2011 for Trafficking in Drugs (Hydrocodone) in violation of R.C. 2925.03 (A)(1)(C)(2)(c). The indictment alleged that Lomack "did knowingly sell, or offer to sell, Hydrocodone, a Schedule III Controlled Substance, in an amount equal to or exceeding the bulk amount, but less than five times the bulk amount of Hydrocodone, the said offense having occurred within the vicinity of a juvenile, in violation of Section 2925.03(A)(1)(C)(2)(c) of the Ohio Revised Code, a felony of the fourth degree."

**{¶6}** On June 6, 2011, the state filed a motion to amend the indictment to reflect that the language and code section involved was for a felony of the third degree. This motion alleged that the statement in the indictment that indicated that the charge was "a felony of the fourth degree" was a typographical error. On June 7, 2011, the trial court granted that motion and amended the indictment to reflect that the charge was a felony of the third degree. On July 21, 2011, Lomack's original trial counsel filed a "Motion to Vacate Previously Granted Motion to Amend Indictment" because he was not given an opportunity to respond to the state's motion to amend. The trial court denied that motion on July 27, 2011.

**{¶7}** On February 15, 2012, Lomack filed a Motion to Suppress. The Court held a suppression hearing that same day. During the hearing, Lieutenant Cortright admitted that he did not have Lomack sign a written *Miranda* waiver, nor did he record his conversation with Lomack.

**{¶8}** Lomack testified that he was not read his *Miranda* rights. Lomack further testified that, upon approaching him, Lieutenant Cortright demanded to know where the money was and reached into Lomack's pocket and pulled out a $20.00 bill. Lomack

testified that Lieutenant Cortright told him to "step outside." Once outside, Lomack testified that Lieutenant Cortright threatened Lomack and his children, telling Lomack that if he did not sign a statement, Lieutenant Cortright would lock up Lomack's wife and send the kids to Children's Services.

**{¶9}** At the conclusion of the hearing, the trial court overruled Lomack's motion to suppress.

**{¶10}** Lomack was found guilty of Trafficking in Drugs after a jury trial. The jury also returned two special findings. They found that the amount of the drugs involved was equal to or in excess of the bulk amount but less than five times the bulk amount. The jury also found that the offense was committed in the vicinity of a juvenile. Lomack was sentenced immediately following the jury trial to a term of 30 months in prison.

*ASSIGNMENTS OF ERROR*

**{¶11}** Lomack raises four assignments of error,

**{¶12}** "I. THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN THE COURT GRANTED THE STATE OF OHIO'S JUNE 6, 2011 MOTION TO AMEND THE INDICTMENT.

**{¶13}** "II. THE COURT COMMITTED A REVERSIBLE ERROR BY NOT PROVIDING MR. LOMACK AN OPPORTUNITY TO RESPOND TO THE STATE'S MOTION TO AMEND THE INDICTMENT.

**{¶14}** "III. THE TRIAL COURT COMMITTED A PREJUDICIAL ERROR IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS REGARDING DEFENDANT'S STATEMENTS MADE TO AUTHORITIES AT THE SCENE OF THE INCIDENT.

{¶15} "IV. DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I. & II.

{¶16} Lomack's first and second assignments of error raise common and interrelated questions; therefore, we will address the arguments together.

{¶17} Section 10, Article I of the Ohio Constitution states: "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This constitutional provision "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." *State v. Headley*, 6 Ohio St.3d 475, 478-479, 453 N.E.2d 716(1983).

{¶18} Crim.R. 7(D) supplements this constitutional right by specifying when a court may permit an amendment to an indictment: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."

{¶19} A trial court's decision allowing an amendment that changes the name or identity of the offense charged constitutes reversible error regardless of whether the accused can demonstrate prejudice. *State v. Honeycutt,* 2nd Dist. No. 19004, 2002-

Ohio-3490. When an amendment is allowed that does not change the name or identity of the offense charged, the accused is entitled to a discharge of the jury or a continuance, "unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." *Honeycutt, quoting,* Crim.R. 7(D). A trial court's decision to permit the amendment of an indictment is reviewed under an abuse of discretion standard. *State v. Beach,* 148 Ohio App.3d 181, 2002-Ohio-2759, 772 N.E.2d 677, ¶23, *appeal not allowed,* 96 Ohio St.3d 1516, 2002-Ohio-4950. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140(1983), *quoting State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144(1980). To demonstrate error, defendant must show not only that the trial court abused its discretion, but that the amendment prejudiced his defense. *Blakemore.*

**{¶20}** In the present matter, both the original and the amended indictments properly informed Lomack that he was charged with selling or offering to sell "Hydrocodone, a Schedule III Controlled Substance, in an amount equal to or exceeding the bulk amount but less than five times the bulk amount of Hydrocodone, said offense having occurred within the vicinity of a juvenile, in violation of Section 2925.03(A)(1)(C)(2)(c)."

**{¶21}** The function of an indictment is to give adequate notice to the defendant of what he is being charged with and a fair chance to defend. *State v. Sellards* (1985), 17 Ohio St.3d 169, 170, 478 N.E.2d 781(1985). A criminal indictment serves two

purposes. First, an indictment "compels the government to aver all material facts constituting the essential elements of an offense," providing the accused adequate notice and the opportunity to defend the charges. *State v. Childs*, 88 Ohio St.3d 194, 198, 724 N.E.2d 781(2000). Second, the indictment, "by identifying and defining the offense, * * * serves to protect the accused from future prosecutions for the same offense." Id. In this case, the indictment made Lomack aware that he was facing an enhanced penalty for trafficking in excess of the bulk amount and in the presence of a minor.

**{¶22}** The misnumbering of the statute in an indictment does not invalidate the indictment. *State ex rel. Dix v. McAllister*, 81 Ohio St.3d 107, 108, 1998-Ohio-646, *citing State v. Morales*, 32 Ohio St.3d 252, 254, 513 N.E.2d 267(1987). Crim.R. 7(B) provides, in part, "Error in the numerical designation or omission of the numerical designation shall not be grounds for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant."

**{¶23}** In the case at bar, Lomack was not prejudiced in preparing his defense because he was given adequate notice of what the state intended to prove at trial. *State v. Earle*, 120 Ohio App.3d 457, 467, 698 N.E.2d 440(1997). Accordingly, the trial court correctly concluded that Lomack would not be prejudiced from the amendment. From consideration of the whole proceedings, this Court finds that no failure of justice resulted from the amendment of the indictment in Lomack's case.

**{¶24}** Lomack has failed to demonstrate how the result would be different had he been given the opportunity to respond prior to the trial court granting the state's motion to amend the indictment.

**{¶25}** Lomack's first and second assignments of error are overruled in their entirety.

III.

**{¶26}** Lomack contends that the trial court erred by denying his motion to suppress incriminating statements made during custodial interrogation because he had not knowingly, voluntarily, and intelligently waived his *Miranda* rights. Specifically, Lomack claims that he was threatened and coerced into confessing. Lomack further contends that this version of events is supported by credible evidence.

**{¶27}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988(1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra. However, once an appellate court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, also, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra. Moreover, due weight should be given "to

inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**{¶28}** In order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning if there was a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966). If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights. Id., at 476, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

**{¶29}** Whenever the state bears the burden of proof in a motion to suppress a statement allegedly obtained in violation of the *Miranda* doctrine, the state need prove waiver only by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618(1972); *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473(1986). The question of voluntariness necessarily turns on the totality of circumstances. *Boulden v. Holman,* 394 U.S. 478, 480, 89 S.Ct. 1138, 1139, 22 L.Ed.2d 433(1969).

**{¶30}** A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. *Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954. *See, also, State v. Black*, 48 Ohio St.2d 262, 358 N.E.2d 551(1976), paragraph four of the syllabus, *vacated in part* 438 U.S. 910, 98 S.Ct. 3134, 57 L.Ed.2d 1154(1978). Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which *Miranda* was based. *Colorado v. Connelly,* 479 U.S. at 170, 107

S.Ct. 515, 93 L.Ed.2d 473. Evidence of use by the interrogators of an inherently coercive tactic (*e.g.,* physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854(1988).

**{¶31}** In *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, the Ohio Supreme Court noted,

> [i]t is well established that at a suppression hearing, "the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, *citing State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583. The trial court was free to find the officers' testimony more credible than appellant's. We therefore defer to the trial court's ruling regarding the weight and credibility of witnesses. *State v. Moore* (1998), 81 Ohio St.3d 22, 31, 689 N.E.2d 1.

*Brown,* ¶15, 689 N.E.2d 1. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159. Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008–Ohio–6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964(2nd Dist.), ¶81. In other words, "[w]hen there exist two fairly reasonable views of the

evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶32}** Our review of the entire record convinces us that the evidence was substantial enough for the trier of fact to have reasonably concluded that the state had proved that Lomack was advised of his *Miranda* rights and knowingly, intelligently and voluntarily waived those rights prior to speaking with the police.

**{¶33}** Lomack's third assignment of error is overruled.

IV.

**{¶34}** In his fourth assignment of error, Lomack maintains that his conviction is against the manifest weight of the evidence.

**{¶35}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; *see also, McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239,¶146; *State v. Clay*, 187 Ohio App.3d 633, 2010-Ohio-2720, 933 N.E.2d 296, ¶68.

**{¶36}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541(1997), *superseded by*

*constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶37}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶38}** Lomack was found guilty of knowingly selling or offering to sell, Hydrocodone, a Schedule III Controlled Substance, in an amount equal to or exceeding the bulk amount but less than five times the bulk amount of Hydrocodone, said offense having occurred within the vicinity of a juvenile.

**{¶39}** A person acts knowingly, regardless of his or her purpose, when that person is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). It is necessary to look at all the attendant facts and circumstances in order to determine if a defendant knowingly possessed a controlled substance. *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049(1998).

**{¶40}** For purposes of R.C. Chapter 2925, a sale is defined as follows: "'Sale' includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 2925.01(A) (incorporating definition found in R.C. 3719.01(AA)).

**{¶41}** Lomack arrived at the Flying J in a van accompanied by his wife and minor children. Fister testified that he approached Lomack while Lomack was still seated inside the van. Fister testified that Lomack sold him the drugs. Lomack admitted to the police orally and in writing, that he sold the drugs to Fister. Those drugs were recovered and submitted for testing, which indicated that they were the Schedule III version of Hydrocodone. Undercover officers watched the transaction. Officers observed the children inside the van as the transaction was occurring.

**{¶42}** We believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that Lomack committed the offense of selling, or offering to sell, Hydrocodone, a Schedule III Controlled Substance, in an amount equal to or exceeding the bulk amount but less than five times the bulk amount of Hydrocodone, said offense having occurred within the vicinity of a juvenile.

**{¶43}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81(2nd Dist.). In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶44}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717(1st Dist. 1983). The jury as the trier of fact was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost its way nor created a miscarriage of justice in convicting Lomack of selling, or offering to sell, Hydrocodone, a Schedule III Controlled Substance, in an amount equal to or exceeding the bulk amount but less than five times the bulk amount of Hydrocodone, said offense having occurred within the vicinity of a juvenile.

**{¶45}**    Lomack's fourth assignment of error is overruled.

**{¶46}**    For the foregoing reasons, the judgment of the Court of Common Pleas, of Licking County, Ohio, is affirmed.

By Gwin, J.,

Delaney, P.J., and

Hoffman, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

WSG:clw 1211

[Cite as *State v. Lomack*, 2013-Ohio-5.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| SAMUEL LOMACK, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-32 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, of Licking County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN