[Cite as *State v. Saunders*, 2022-Ohio-4739.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2022-CA-21 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-344 |
| | : | |
| RAYMOND L. SAUNDERS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 29th day of December, 2022.

. . . . . . . . . . .

MEGAN A. HAMMOND, Atty. Reg. No. 0097714, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, P.O. Box 145, Springboro, Ohio 45066
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Raymond L. Saunders appeals from his conviction following a jury trial on felony charges of tampering with records and telecommunications fraud and on misdemeanor charges of obstructing official business and interference with custody.

{¶ 2} Saunders contends the trial court erred in overruling a motion to dismiss the charges against him based on a statutory speedy-trial violation. He also challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions for tampering with records, telecommunications fraud, and obstructing official business. Finally, he argues ineffective assistance of counsel based on his attorney's failure to (1) retain an expert witness to examine data obtained from his Google account, (2) cross-examine a detective about the data, and (3) admit into evidence a full "Cellebrite" report generated from downloaded content from Saunders' Google account.

{¶ 3} Upon review, we see no violation of Saunders' statutory right to a speedy trial. We also conclude that the challenged convictions were supported by legally sufficient evidence and were not against the weight of the evidence. As for ineffective assistance of counsel, the record does not portray constitutionally deficient representation that prejudiced Saunders. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} The present appeal stems from a parenting-time dispute between Saunders and Laqueta Maze, who are the parents of two young children. At the time in question, Maze had legal custody of the children, and Saunders had court-ordered parenting time every Tuesday through Friday from 10:00 a.m. to 6:00 p.m. with additional time as agreed.

While exercising his parenting time on Friday, May 14, 2021, Saunders sought permission to keep the children overnight. Maze denied the request. Saunders then failed to return the children by 6:00 p.m. Maze became concerned and contacted the Fairborn police department. She testified that the police refused to take action, characterizing the dispute as a "civil matter." After Saunders did not return the children Friday night, Maze spent Saturday driving around looking for Saunders and contacting family members. She also spoke to police sergeant Nathan Penrod early that afternoon. Penrod took Maze's complaint and began an investigation that same day.

{¶ 5} Penrod testified that he spoke with Saunders by phone on Saturday, May 15, 2021. Saunders told the sergeant that his parenting time recently had been modified and that he was allowed to have the children on Saturday. The juvenile court was closed on Saturday, so Saunders offered to email Penrod a copy of the modified order. Penrod received the email shortly before 5:00 p.m. It appeared to have been sent to Saunders from his attorney and then forwarded by Saunders to Penrod. The email included a pdf attachment entitled "Copy of maze ordere" (sic). The attached order appeared to be from the juvenile court, and it granted Saunders parenting time Tuesday through Saturday from 10:00 a.m. to 6:00 p.m. Penrod proceeded to spend five to six hours over the weekend researching and pulling records to attempt to confirm the accuracy of the emailed order.

{¶ 6} In the meantime, Saunders returned the children to Maze around 8:30 p.m. on Saturday, May 15, 2021 by dropping them off outside of her house. When sergeant Penrod returned to work the following week, he again spoke to Maze about the incident. She denied the existence of a revised court order giving Saunders parenting time on

Saturdays. Maze reviewed the order Saunders had emailed and told Penrod it was forged. Penrod then referred the matter to detective Alan Kraker on May 20, 2021.

{¶ 7} Detective Kraker contacted the juvenile court and established that the order Saunders had emailed indeed was fraudulent. Kraker interviewed Saunders on June 28, 2021. During the interview, Saunders admitted keeping the children Friday night without authorization. He insisted, however, that he believed the disputed order granting him parenting time from 10:00 a.m. to 6:00 p.m. on Saturday was valid. He suggested that his attorney had sent it to him and that he simply had forwarded it to sergeant Penrod. In short, Saunders admitted emailing Penrod the fraudulent order but denied knowing that it had been forged.

{¶ 8} Detective Kraker subsequently obtained a search warrant for Saunders' Google account. When reviewing the account information he received, Kraker confirmed that Saunders' email address and telephone number were associated with the account. The "account recovery" phone number and the "two-step verification" phone number also matched Saunders' number. The information Kraker received was a "digital download from Google" consisting of electronic data. Kraker turned the information over to detective Shane Hartwell for forensic analysis.

{¶ 9} Detective Hartwell ran the Google account data he received through a "Cellebrite" software program to create a user-friendly report. Hartwell testified that Saunders would have needed to follow a "two-step verification" process to access his Google account. The process would have involved Saunders entering a user name and password, then receiving a "pin code" by text message and entering the code to access

the account. With regard to the content of the data he examined, Hartwell identified messages sent from Saunders to Penrod. The email with the attached forged order was sent by Saunders to Penrod at 4:51 p.m. on May 15, 2021. According to Hartwell, the attached order had been edited several times within Saunders' account.

{¶ 10} Edward Frizzell, who was Saunders' attorney in the juvenile-court proceedings regarding custody and parenting time, also testified at the criminal trial. Frizzell denied forging the parenting-time order or sending a forged order to Saunders.

{¶ 11} The final witness was Saunders, who testified in his own defense. He admitted keeping the children overnight Friday in violation of even the disputed parenting-time order. He explained, however, that the order he emailed to Penrod did give him parenting time on Saturdays from 10:00 a.m. to 6:00 p.m. Saunders claimed he did not create the forged order and that he believed it was legitimate when he sent it to Penrod. Saunders acknowledged that his phone number was contained in the Google data linked to his account. He pointed out, however, that another phone number also was shown as being associated with the account. Saunders identified that phone number and testified that it belonged to Eric Hocker, who was Maze's boyfriend and the father of another child with her. Saunders testified that a review of the Google records showed Hocker's email address and showed Hocker being logged into Saunders' account. Saunders' theory was that Hocker had accessed the account and altered the existing parenting-time order to frame him.

{¶ 12} Saunders testified that he relied on that altered order and emailed it to Penrod without knowing that it had been changed. With regard to the alleged

modifications of the order shortly before he emailed it, Saunders claimed that he was simply moving the document around between devices and converting it from one file format into another. On cross-examination, Saunders insisted that the Google account data showed Hocker logging into the account under Saunders' email address and not logging out. Saunders testified that he had no close relationship with Hocker, who had no reason to be logged into his account. In response to this explanation from Saunders, the prosecutor stated: "Well, perhaps it may have been a better question to ask Detective Hartwell when he testified, but I think we're going to have to just agree to disagree about what that page shows."

{¶ 13} Based on the evidence presented, the jury found Saunders guilty of all charges against him. The trial court sentenced him to five years of community control sanctions. This appeal followed.

## II. Analysis

{¶ 14} Saunders advances four assignments of error. He raises a speedy-trial issue, challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions, and alleges ineffective assistance of trial counsel.

## A. Speedy Trial

{¶ 15} In his first assignment of error, Saunders contends the trial court erred in failing to dismiss the charges against him based on a violation of his statutory right to a speedy trial. The narrow issue Saunders raises is whether speedy-trial time should have been tolled (1) during the pendency of the State's effort to have him undergo a competence evaluation and to have the trial court determine his competency and (2) due

to a continuance requested by the State based on the prosecutor's scheduled surgery.

{¶ 16} Saunders argues that neither his attorney nor the trial court had expressed any concern about his competence and that the State's motion for a competence evaluation was unfounded and should not have tolled speedy-trial time. With regard to the prosecutor's surgery, Saunders claims the trial court improperly ruled on the continuance request before he could respond. He further argues that the trial court failed to provide a rationale for granting the continuance. Finally, Saunders contends another prosecutor should have been able to handle the case, making a continuance unnecessary.

{¶ 17} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. This constitutional mandate has been codified in R.C. 2945.71, which designates specific time limits for bringing a defendant to trial. As relevant here, a defendant charged with a felony must be brought to trial within 270 days of arrest. R.C. 2945.71(C)(2). Each day that a defendant is held in jail in lieu of bail counts as three days when computing this time. R.C. 2945.71(E). This means a defendant held in jail must be brought to trial within 90 days of arrest. Speedy-trial time may be tolled by certain events delineated in R.C. 2945.72. Compliance with the speedy-trial statutes is mandatory, and they "must be strictly construed against the state." *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12. "The rationale supporting speedy-trial legislation is to prevent inexcusable delays caused by indolence within the judicial system." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 8. "Review of a

speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 15.

{¶ 18} In the present case, Saunders was held in jail in lieu of bail. Therefore, he was required to be brought to trial within 90 days of his arrest. Saunders was arrested and confined on the above-captioned charges on June 28, 2021. Ninety days from June 28, 2021 was September 26, 2021. Saunders' trial originally was scheduled for September 13, 2021. It did not commence until January 25, 2022, which was 121 days after the original September 26, 2021 speedy-trial deadline.

{¶ 19} On August 30, 2021, however, Saunders moved to continue the scheduled September 13, 2021 trial date, citing a need for additional time for "plea negotiation/trial preparation" and a scheduling conflict for defense counsel. On September 1, 2021, the trial court sustained Saunders' motion, tolled speedy trial time pursuant to R.C. 2945.72(H), and reset trial for October 25, 2021. As a result, the 42 days between September 13 and October 25, 2021, were not chargeable to the State. Speedy-trial time also was tolled for two days between the filing of Saunders' motion for a continuance and the trial court's ruling on the motion.

{¶ 20} During the interim between the originally scheduled trial date and the new trial date, Saunders filed a pro se motion to dismiss the charges against him. The trial court overruled the motion because Saunders was represented by counsel. On October 5, 2021, Saunders' counsel then moved to withdraw from further representation, citing a

breakdown in the attorney-client relationship and Saunders' desire to represent himself. The trial court held an October 13, 2021 hearing on the motion to withdraw as counsel. During the hearing, Saunders made statements about being a "Moor," about "filing a UCC-1," and about "capitis diminution maxima." *See* Motion to Withdraw Transcript at 5. Saunders told the trial court he had "fraternity brothers" and Masonic lodge friends who were attorneys and who already had "done this case" for him. *Id.* at 14-15. When the trial court asked why Saunders did not have one of those attorneys represent him, he responded: "Well, when the Court can show me jurisdiction over my straw man that I own the account, then I would. But I haven't seen any jurisdiction or proof of jurisdiction over my straw man." *Id.* at 16. Saunders proceeded to assert that the trial court was displaying a wartime flag. He explained that "when you cross into the courtroom, you are operating under maritime admiralty law, because I'm now on a ship, and that's the reason why this Court is set up like that." *Id.* at 18-19. After the hearing, the trial court permitted Saunders to waive counsel.

{¶ 21} The following day, October 14, 2021, the State filed a motion seeking to have Saunders undergo a competency evaluation. As reasonable grounds for its request, the State relied largely on Saunders' comments during the hearing on counsel's motion to withdraw. On October 18, 2021, the trial court sustained the State's motion and ordered Saunders to undergo an evaluation. The trial court amended its entry the following day to clarify that the evaluation was for competency, not sanity. Also on October 19, 2021, the trial court sustained a motion by Saunders to have counsel reappointed to represent him and to withdraw his waiver of counsel. After reviewing a competency-evaluation report,

the trial court filed a November 30, 2021 entry finding Saunders competent to stand trial.

{¶ 22} On appeal, Saunders contends speedy-trial time should not have been tolled between October 14, 2021, when the State filed its motion for a competency evaluation, and November 30, 2021, when the trial court found Saunders competent. We disagree. Pursuant to R.C. 2945.72(B), speedy-trial time is tolled for "[a]ny period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined[.]" Although Saunders did not seek the competency evaluation, tolling nevertheless applied provided that the trial court did not abuse its discretion in sustaining the State's motion and ordering an evaluation. *State v. Ridley*, 6th Dist. Lucas No. L-10-1314, 2013-Ohio-1268, ¶ 19, citing *State v. Patton*, 10th Dist. Franklin No. 08AP-800, 2009-Ohio-1382, ¶ 10. Based on our review of the record, we do not find that the trial court acted unreasonably or otherwise abused its discretion in finding a competency evaluation warranted. Therefore, the 47 days between October 14 and November 30, 2021 were not chargeable to the State for speedy-trial purposes.

{¶ 23} Because of the competency evaluation and related proceedings, the trial court was required to reset the previously-scheduled October 25, 2021 trial date. During a November 30, 2021 oral hearing and in its judgment entry filed on that date finding Saunders competent, the trial court scheduled trial for January 31, 2022. On December 1, 2021, however, the trial court sua sponte moved the scheduled trial date up to December 20, 2021. Thereafter, on December 8, 2021, the State moved for a continuance and sought to extend speedy-trial time under R.C. 2945.72(H), which tolls time for "the period of any reasonable continuance granted other than upon the accused's

own motion." The basis for the request was that the prosecutor was scheduled for "necessary and time-sensitive surgery" on December 21, 2021. The motion explained that surgery originally had been scheduled for earlier in the year but had been postponed until late December for reasons beyond the prosecutor's control. Based on the complexity of the procedure and the lengthy recovery period, the State sought a continuance of trial until January 24, 2022. The State noted that it had considered having another prosecutor take the case, but it preferred not to do so given the nature and complexities of the case. On December 13, 2021, the trial court sustained the State's motion and continued the trial date until January 24, 2022.

{¶ 24} On appeal, Saunders contends speedy-trial time should not have been tolled between December 20, 2021, and January 24, 2022. He notes that the trial court ruled on the State's motion before he could respond, did not hold a hearing on the motion, and failed to cite specific reasons for granting the continuance. Saunders also asserts that the State's justification for a continuance was unreasonable because another prosecutor could have handled the case.

{¶ 25} Upon review, we see no error in the trial court's decision to grant a continuance based on the prosecutor's scheduled surgery. "It is permissible for a trial court to grant the state a continuance of a trial date beyond the statutory speedy trial time limit if the continuance is reasonable and necessary under the circumstances." *State v. Ramey*, 2012-Ohio-6187, 986 N.E.2d 462, ¶ 20 (2d Dist.). Moreover, there is no per se requirement for a trial court to hold a hearing on a motion for a continuance. *See, e.g.*, Greene County C.P. Loc.R. 3.05 (recognizing that a trial court has discretion to rule on a

motion in a criminal case without a hearing). As an officer of the court, the prosecutor provided a full explanation of the circumstances necessitating a continuance. In our view, the trial court acted within its discretion in accepting the prosecutor's representations and finding a continuance justified without the need for a hearing.

{¶ 26} Although the trial court's order granting a continuance did not spell out the rationale for its decision, it did specify that the continuance was ordered "for good cause shown." It is beyond dispute that the "good cause shown" was the explanation provided in the memorandum accompanying the State's motion. Therefore, the trial court effectively did set forth the basis for its decision by reference. *Compare State v. Tope*, 2d Dist. Greene No. 2019-CA-11, 2020-Ohio-953, ¶ 30, quoting *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 62 ("[D]espite the trial court's omission of an express finding that the unavailability of the coroner was the basis for its decision to grant the continuance, the court did expressly indicate that it granted the continuance for the reason set forth by the State in its motion. * * * The record thereby 'affirmatively demonstrates the necessity for [the] continuance and the reasonableness thereof,' and the court's decision to grant the continuance should consequently be upheld.").

{¶ 27} We also see no error in the trial court's accepting the State's assertion that it was impracticable to have another prosecutor take over Saunders' case. Based on the record before us, the trial court reasonably could have determined that the nature and complexity of the case justified continuing the trial date so the original prosecutor could participate. In reaching this conclusion, we note that the case involved forensic analysis of Saunders' Google account data, an issue with which the original prosecutor

undoubtedly had acquired familiarity.

{¶ 28} Finally, we are unpersuaded that the trial court's premature ruling on the State's motion resulted in a speedy-trial violation. As set forth above, the trial court granted a continuance six days after the State filed its motion. Although the trial court ruled without giving Saunders 14 days to respond, he was served with the trial court's order and failed to lodge any complaint until January 3, 2022, when he filed a motion to dismiss, arguing that a continuance was unjustified and that speedy-trial time had expired on December 28, 2021.

{¶ 29} We have held that a trial court's premature issuance of an order in a criminal case does not violate due process where the defendant knew about the order and failed to object or seek additional time despite being able to do so. *State v. Webster*, 2d Dist. Clark No. 2019-CA-47, 2020-Ohio-3576, ¶ 17-18 (involving a trial court's scheduling of a retrial prior to expiration of a defendant's time to file a motion for judgment of acquittal). Ohio courts also have found no reversible error where a defendant fails to show how the result would have been different if he had been given an opportunity to respond prior to a trial court's ruling on a motion by the State. *State v. Lomack*, 5th Dist. Licking No. 2012-CA-32, 2013-Ohio-5, ¶ 24; *State v. Starks*, 6th Dist. Lucas No. L-10-1191, 2011-Ohio-1704, ¶ 39.

{¶ 30} In *State v. Kelley*, 5th Dist. Fairfield No. 13-CA-78, 2014-Ohio-3673, the Fifth District found no reversible error where the trial court sustained a motion one day after it was filed without first granting the opposing party an opportunity to respond. *Id.* at ¶ 15. The motion in *Kelley* was a motion to supplement a motion to suppress. Weeks after

the trial court sustained the motion, the State filed a memorandum challenging the motion to supplement. The trial court considered the State's arguments and rejected them after the fact. Under these circumstances, the Fifth District found that the State had not been prejudiced by the trial court's premature ruling. *Id*. at ¶ 15-19. In reaching its conclusion, the Fifth District distinguished cases involving a trial court's issuance of a dispositive ruling without first giving the losing party an opportunity to respond. *Id*. at ¶ 18.

**{¶ 31}** Here the trial court prematurely ruled on the State's motion for a continuance. In that ruling, the trial court found a continuance to be reasonable and necessary under the circumstances. Despite the trial court's premature decision granting a continuance and tolling-speedy trial time, Saunders later did present his substantive arguments opposing the continuance. He did so in the context of his January 3, 2022 motion to dismiss the charges against him. There he argued that a continuance was not reasonably necessary. The trial court addressed Saunders' arguments on their merits and rejected them, reiterating its belief that a continuance was appropriate. As in *Kelley*, then, Saunders ultimately did have an after-the-fact opportunity to oppose both the State's motion and the trial court's ruling granting a continuance. Under these circumstances, we fail to see how Saunders was prejudiced, particularly given our determination above that the trial court's order granting a continuance substantively was correct. Any error in the timing of the trial court's continuance ruling was harmless. For the foregoing reasons, we conclude that the trial court correctly tolled speedy-trial time for 35 days between December 20, 2021, and January 24, 2022. Finally, on January 21, 2022, the trial court sua sponte continued the trial one additional day from January 24 until January 25, 2022,

due to a confirmed positive COVID-19 diagnosis by the prosecutor. We find that one-day continuance to be appropriate as well.

{¶ 32} In light of the tolling events set forth above, we agree with the State that Saunders was brought to trial within the statutory speedy-trial deadline. He was arrested and confined on June 28, 2021. Ninety days from June 28, 2021 was September 26, 2021. His trial commenced on January 25, 2022, which was 121 days after the original September 26, 2021 speedy-trial deadline. In our analysis above, however, we have identified at least 127 days during which speedy-trial time was tolled. Consequently, the trial court did not err in overruling Saunders' motion to dismiss based on a speedy-trial violation. The first assignment of error is overruled.

## B. Legal Sufficiency and Manifest Weight of the Evidence

{¶ 33} In his second and third assignments of error, Saunders challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions for tampering with records, telecommunications fraud, and obstructing official business.

{¶ 34} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 35} Our analysis is different when reviewing a manifest-weight argument. When

a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 36} With the foregoing standards in mind, we conclude that Saunders' convictions were based on legally sufficient evidence and were not against the weight of the evidence. Saunders challenges his convictions for tampering with records, telecommunications fraud, and obstructing official business. His records-tampering conviction required proof that he falsified or altered a government writing or record with a purpose to defraud. R.C. 2913.42(A)(1) and (B)(4). His telecommunications-fraud conviction required proof that he knowingly disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing or image with purpose to execute or otherwise further a scheme to defraud. R.C. 2913.05(A). Finally, his obstructing-official-business conviction required proof that he did an act that hampered or impeded a public official in the performance of the public official's lawful duties and that he did so with purpose to prevent, obstruct, or delay the performance of the public official's

authorized actions.

{¶ 37} With regard to records tampering and telecommunications fraud, Saunders admitted that he emailed a falsified court order to sergeant Penrod. He insisted, however, that he did not falsify the order and did not know it had been falsified. Therefore, he contends his convictions for records tampering and telecommunications fraud were based on legally insufficient evidence and were against the weight of the evidence.

{¶ 38} We disagree. The State's evidence demonstrated that the parenting-time order was "modified" several times within Saunders' Google account the same day he emailed it to Penrod. *See* Cellebrite Report, State's Exhibit 23. The "path" showed Saunders' email address being involved in the modifications, which also included converting the court order into various formats, including an editable Microsoft Word document. *Id.* The record reflects that the original court order was modified to give Saunders parenting time on Saturdays from 10:00 a.m. to 6:00 p.m. The modified version also included a changed filing time. Finally, a thumbnail image of the magistrate's signature was found in Saunders' account. This evidence, if believed, was legally sufficient to support his conviction for records tampering and telecommunications fraud.

{¶ 39} Saunders' theory that Eric Hocker hacked his Google account and modified the order without his knowledge went to the manifest weight of the evidence. In our view, however, the jury acted within its discretion in rejecting Saunders' version of events. In addition to Saunders' telephone number, the record did reflect a second telephone number associated with his Google account. *See* Google Subscriber Information, State's Exhibit 17. Saunders identified this other telephone number as belonging to Eric Hocker.

The Google records also identify Hocker's email address as being an account "Linked by SMS" to Saunders' account. *See* Cellebrite Report, State's Exhibit 23.

**{¶ 40}** Although Hocker's email address and telephone number did appear in Saunders' Google account records, we see nothing to compel or even to support a finding that Hocker hacked into the Google account and modified the court order prior to Saunders' sending it to Penrod. As set forth above, the State's evidence demonstrated that the order was modified very shortly before Saunders emailed it and that the changes and transfers were made using Saunders' email address. Ultimately, it was for the jury to assess Saunders' credibility and to determine what weight to give to his testimony. We do not find that the jury lost its way and created a manifest miscarriage of justice by finding Saunders guilty of records tampering and telecommunications fraud.

**{¶ 41}** Saunders' conviction for obstructing official business also was supported by legally sufficient evidence and was not against the weight of the evidence. At Laqueta Maze's request, sergeant Penrod was investigating the whereabouts of the two children on Saturday, May 15, 2021. In the course of his investigation, Penrod spoke to Saunders, who claimed that his parenting time recently had been modified and that he was allowed to have the children on Saturdays. Saunders emailed Penrod the falsified order to prove his entitlement to Saturday parenting time. Because the juvenile court was closed, Penrod spent five or six hours attempting to confirm the accuracy of the emailed order through other sources.

**{¶ 42}** The jury reasonably found that Saunders had obstructed official business by emailing Penrod the falsified order when the court was closed so that he could keep

the children on Saturday. The State's evidence supported a finding that Saunders had sent Penrod the order to hamper or impede the sergeant in the performance of his lawful duties and that Saunders did so with purpose to prevent, obstruct, or delay Penrod's investigation of the legitimacy of the order and Saunders' right to Saturday parenting time. Viewing the evidence in a light most favorable to the prosecution, the jury could have found the elements of the offense proven beyond a reasonable doubt. This also is not an exceptional case in which the evidence weighed heavily against Saunders' conviction. Accordingly, the second and third assignments of error are overruled.

## C. Ineffective Assistance of Counsel

{¶ 43} In a final assignment of error, Saunders argues ineffective assistance of counsel based on his attorney's failure to (1) retain an expert witness to examine the data obtained from his Google account, (2) cross-examine detective Hartwell about the data, and (3) admit into evidence the full Cellebrite report referenced by Hartwell.

{¶ 44} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis for a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605

N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.).

**{¶ 45}** Here Saunders' arguments fail to establish ineffective assistance of counsel. A fundamental problem with his assertions is that we have no way to test them to determine whether the alleged deficiencies he cites were prejudicial. For example, we have no way of knowing what a defense expert would have said if counsel had retained one to examine the data obtained from Saunders' Google account. For all we know, a defense expert may have agreed with detective Hartwell's incriminating analysis and conclusions.

**{¶ 46}** We reach the same conclusion regarding Saunders' complaint about defense counsel's failure to cross examine Hartwell. It is impossible to know what Hartwell would have said about Saunders' theory that Eric Hocker had hacked into his Google account and framed him. If questioned about the matter, Hartwell very well may have explained why Saunders' theory was wrong. Indeed, defense counsel may have recognized flaws in Saunders' theory and declined to raise the issue with Hartwell on cross-examination for that reason.

**{¶ 47}** Saunders' final argument about defense counsel's failure to admit the full Cellebrite report into evidence also lacks merit. State's Exhibit 23 was a power-point presentation based on the content of the Cellebrite report. It is unclear how much of the actual Cellebrite report was contained in the power-point presentation. But even if the full report was not incorporated into the presentation and admitted into evidence, we have no way of knowing whether any omitted portions would have made a difference or whether defense counsel's failure to admit the full report was prejudicial. On the record before us,

then, Saunders cannot establish ineffective assistance of counsel. His fourth assignment of error is overruled.

### III. Conclusion

**{¶ 48}** Having overruled Saunders' assignments of error, we affirm the judgment of the Greene County Common Pleas Court.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Megan A. Hammond
Johnna M. Shia
Hon. Adolfo A. Tornichio