[Cite as *State v. Nalls*, 2023-Ohio-1996.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29605 |
| | : | |
| v. | : | Trial Court Case No. 2020 CR 1992 |
| | : | |
| LARRY NALLS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 16, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

MICHAEL MILLS, Attorney for Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Larry Nalls appeals from his conviction in the Montgomery County Court of Common pleas after he was found guilty of illegal use of a minor or impaired person in nudity-oriented material or performance, gross sexual imposition (GSI), sexual imposition, and having a weapon while under disability. He was sentenced to 56½ years in prison. For the reasons that follow, the judgment of the trial

court will be affirmed.

I.    **Facts and Procedural History**

{¶ 2} Until the summer of 2018, 13-year-old N.N. had, by all accounts, a good relationship with her maternal grandfather, Larry Nalls. N.N. and her siblings would often accompany Nalls, who was a photographer by trade, to photo shoots, and they would frequently participate in them. According to trial testimony, Nalls was always taking photographs of the family.

{¶ 3} Starting in the summer of 2018 (the summer between N.N.'s eighth and ninth grade years), Nalls' behavior turned "inappropriate." N.N. testified that Nalls began showing her pornographic videos and, during a visit to his house in early July, Nalls asked if N.N. would be willing to take pictures in a bikini – a skimpy gold one that he had purchased specifically for this photo shoot. N.N. told the jury that she was uncomfortable and nervous, but she agreed nonetheless.

{¶ 4} Nalls began photographing N.N. in her swimsuit but soon suggested that she take off her top. "So then he was like, 'okay, well did you want to take your top off,' and I don't remember what I said, but I remember him walking up to me, taking his fingers and putting it in my bikini [bottom], caressing on me and kind of putting his mouth on my nipples, licking them." Trial Tr. at 56. Nalls continued taking pictures, but now N.N. was topless.

{¶ 5} After traveling to a local park to take more photographs, they ended up back at Nalls' home studio where he told N.N. to bend over a chair. She testified that Nalls unsuccessfully tried to put his penis in her vagina, so he got some Vaseline, applied it,

and then inserted it. N.N. told him that it hurt, but he continued anyway. Nalls only stopped when N.N. told him she wanted to go home. Before he took her home, though, Nalls gave N.N. $50 and told her that she owed him, "[s]o every time after that * * * when I would ask him to take me somewhere, he would be like 'You're going to do this video for me.' " Trial Tr. at 57.

{¶ 6} After the July incident, N.N. did not immediately tell anyone what had happened because she was afraid she might get in trouble. In November 2018, however, N.N. informed her mother, who immediately called the police. On December 6, 2018, Dayton police executed a search warrant on Nalls' home. There, detectives seized electronic devices, including computers and an external hard drive which was hidden between a speaker and a post. Officers also collected a Beretta firearm from an upstairs bedroom.

{¶ 7} When the hard drive was downloaded and the contents examined, topless images of N.N. were found in the device's "unallocated space" – an area of storage that contained deleted files. The files retained their metadata, and investigators were able to conclude that they were taken on July 4, 2018, and modified a day later.

{¶ 8} Based on the evidence collected in the investigation, Nalls was charged with 27 counts of illegal use of a minor in nudity-oriented material or performance (R.C. 2907.323(A)(1)) and single counts of unlawful sexual conduct with a minor (R.C. 2907.04(A)), having weapons while under disability (R.C. 2923.13(A)(2)), gross sexual imposition (R.C. 2909.05(A)(1)), sexual imposition (R.C. 2907.06(A)(4)), and violating a protection order (R.C. 2919.27(A)(1)).

**{¶ 9}** After months of motion practice, many different defense attorneys, and federal lawsuits, the case proceeded to trial on August 29, 2022. Just before the trial commenced, however, the State filed a motion in limine to exclude the testimony of several defense witnesses who were to testify that Mother had been aware of the pictures and had given Nalls permission to take them. The court granted the motion, and the witnesses did not testify at trial. During three days of testimony, the jury heard from N.N., Mother, detectives, medical professionals, and Nalls' sister (who testified on his behalf); Nalls was found guilty of all 27 counts of illegal use of a minor in nudity-oriented material or performance; he was also found guilty of single counts of GSI, sexual imposition, and having a weapon while under disability. The jury found him not guilty of unlawful sexual conduct with a minor and violating a protection order.

**{¶ 10}** The court reconvened for Nalls' disposition on September 22, 2022. After considering sentencing memoranda from both parties, a victim impact statement from N.N., and the presentence investigation report, the trial court sentenced Nalls to an aggregate term of 56½ years in prison and classified him as a Tier II sexual offender.

**{¶ 11}** Nalls has filed a timely appeal which raises two assignments of error.

## II.     Disallowed Testimony and the Motion in Limine

**{¶ 12}** In his first assignment of error, Nalls argues that his constitutional rights were violated when the trial court did not permit certain witnesses to testify at trial. We disagree.

**{¶ 13}** Prior to trial, the State filed a motion in limine to prohibit several potential defense witnesses from testifying at trial on the basis of relevancy. According to Nalls and

affidavits filed with the court, the witnesses would have testified that Mother, even after learning of the topless photos of N.N., was set to allow Nalls to take further (albeit fully clothed) pictures of her daughter. Nalls contends on appeal that because he could not call these witnesses, he was prevented from laying the foundation for an affirmative defense set out in R.C. 2907.323(A)(1)(a)-(b), the illegal use of a minor in nudity-oriented material statute.

{¶ 14} According to R.C. 2907.323(A)(1)(a)-(b), and as applicable to this appeal, no person shall photograph a minor who is not the person's child in a state of nudity unless both of the following apply: (a) the material is for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, **and** (b) the minor's parents, guardian, or custodian consents in writing. Both R.C. 2907.323(A)(1)(a) and (b) must be satisfied to be covered by the affirmative defense. Based on the record before us, Nalls could not meet either of the requirements.

{¶ 15} The affidavits submitted to the trial court were from family and friends of Nalls who stated that Mother had indicated she knew about the photos taken of N.N. and was going to allow further non-nude pictures to be taken. However, even if Mother knew of the photographs (and she testified during trial that she did not), that does not mean that she consented to them. Consenting to fully-clothed pictures – even after nude ones were taken – was no indication that she approved of the topless ones. In fact, she told the jury at trial, "I would never allow my children to take any type of naked photos of any kind. I don't care who was taking it." Trial Tr. at 197. Further, not one of the affidavits reported that she gave *written* consent as required. Finally, the material, in this case,

photographs, must be for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose. While Nalls argued at trial that N.N. wanted to be a model – a point that both N.N. and Mother denied – there is simply no logical argument to be made that a half-naked child bent over a chair in a sexualized manner is artistic. Nalls could meet neither requirement set forth by R.C. 2907.323(A)(1)(a) or (b), making the use of the affirmative defense inapplicable. The trial court did not err by granting the State's motion in limine to exclude the potential testimony. Nalls' first assignment of error is overruled.

### III.  Ineffective Assistance of Counsel

{¶ 16} In his second assignment of error, Nalls asserts that he was denied effective assistance of counsel as "[Nalls] claimed to have witnesses to support an affirmative defense to R.C. 2907.323, but [counsel] utterly failed to bring any evidence or testimony to trial." Appellant's Brief at 7.

{¶ 17} To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Saunders*, 2022-Ohio-4739, 204 N.E.3d 1237, ¶ 44 (2d Dist.).

{¶ 18} As to the first prong, much deference is given to trial counsel. "[A] court must indulge in a strong presumption that the challenged action might be considered sound trial strategy. Thus, judicial scrutiny of counsel's performance must be highly deferential." *State v. Bird*, 81 Ohio St.3d 582, 585, 692 N.E. 2d 1013 (1998). To demonstrate prejudice

in the second prong, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1998), paragraph one of the syllabus.

{¶ 19} In this case, Nalls cannot meet the first prong of the *Strickland* test. At trial, his attorney attempted to raise the affirmative defense offered in R.C. 2907.323(A)(1)(a)-(b) by eliciting testimony from family friends who allegedly heard Mother say she knew about the topless photographs and was still willing to have Nalls take other pictures of N.N. – the argument being that she must have consented to the nude photos. The trial court rejected the argument, holding that even if it were true that Mother had consented, none of the affidavits claimed that it was in writing; without *written* consent, the affirmative defense failed. Trial counsel also attempted (unsuccessfully) to argue that Nalls was acting in loco parentis during the photo shoot, presumably to show consent. So, while counsel's trial strategy was ultimately unsuccessful, it did not make his performance ineffective.

{¶ 20} The first *Strickland* prong cannot be met, and thus, Nalls' ineffective assistance of counsel claim must fail. Nalls' second assignment of error is overruled.

## IV.    Conclusion

{¶ 21} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.